UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LLOYD ANDERSON,

    Plaintiff,

v.                                                Case No. 3:15cv532/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Lloyd Anderson's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.SC. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed, and the applications for benefits denied.

ISSUES ON REVIEW

Mr. Anderson, who will be referred to as claimant, plaintiff, or by name, raises two issues.  He claims: (1) the Administrative Law Judge ("ALJ") erred in assigning little weight to the opinion of Mr. Anderson's treating physician and nurse and (2) the ALJ's determination that Mr. Anderson can perform the standing and walking required of light work is not supported by substantial evidence.  (Doc. 9).

PROCEDURAL HISTORY

Mr. Anderson filed for DIB on June 12, 2012 and SSI on June 15, 2012, alleging disability beginning November 1, 2011.  T. 261-72.[1]  The Social Security Administration ("SSA") denied the applications initially on July 31, 2012 and upon reconsideration on September 4, 2012.  T. 140, 156.  Mr. Anderson appealed the denials by filing a Request for Hearing on September 10, 2012.  T. 168.  Mr. Anderson appeared before an ALJ at an administrative hearing held on March 18, 2014. T. 36.  After the hearing, the ALJ issued a decision finding Mr. Anderson not disabled from November 1, 2011 through May 1, 2014.  T. 30.  The Appeals Council denied claimant's request for further review on November 2, 2015 and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-4.  The determination of the Commissioner is now before the court for review.

---

[1] The administrative record, as filed by the Commissioner, has 445 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

Case No. 3:15cv532/CJK

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

- "The claimant has the following severe impairments: anxiety, depression, peripheral neuropathy, and a post-traumatic stress disorder."  T. 23.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  T. 24.

- "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant is able to stand/walk at least four hours of an eight-hour workday, attend/concentrate for two hours at a time before needing a break, understand/remember/carry out short simple work instructions, adapt to occasional work-setting changes, and make simple work-related decisions. The undersigned also determines the claimant is unable to interact with the general public, climb ladders/scaffolds, operate foot controls, or be exposed to unprotected heights/dangerous machinery/commercial vehicle operations.  The undersigned further concludes the claimant is occasionally able to push/pull or interact with co-workers/supervisors.

The undersigned notes the claimant's time off-task can be accommodated by normal breaks." T. 25-26.

- "The claimant is unable to perform any past relevant work." T. 29.

- "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." T. 29.

- "The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision." T. 30.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether substantial evidence supports the Commissioner's decision and whether the ALJ applied the correct legal standards. *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that the proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said

that "[s]ubstantial evidence is more than a scintilla. . . ." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner]. . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler,* 768 F.2d 1273 (11th Cir. 1985); *see also Getty ex*

*rel. Shea v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[3]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors, he is not disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[4]

Claimant dates his disability to November 1, 2011, due to foot and back problems, Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder ("PTSD"). T. 110. Claimant offered testimony about his health,

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. *See* 20 C.F.R. §§ 404.1512, 416.912; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. The facts below, where not derived from the medical records, are based largely on plaintiff's testimony in that regard. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Case No. 3:15cv532/CJK

daily activities, and work experience at the hearing before the ALJ. He is 6'0'' tall and weighs approximately 210 pounds. T. 40. At the time of the ALJ's decision, claimant was forty-eight years old. T. 29-30. He has a GED and past work experience as a small engine repairer and short-order cook. T. 29, 40. He has "paranoia" of people around him and difficulty interacting with co-workers and suffers frequent flashbacks of childhood abuse. T. 44, 46. His flashbacks cause concentration difficulty, where claimant "couldn't focus on the job that [he] had to do." T. 45. He also endures panic attacks, with some attacks lasting eight hours. T. 54, 56. Claimant experiences "burning sensations" in both feet that feel like "bones are splintering into [his] feet" after walking two or three blocks. T. 48-49.

After finishing a prison sentence in 2004, claimant sought treatment at Lakeview Center. T. 41, 48. While followed at Lakeview, claimant's Global Assessment of Functioning ("GAF") scores[5] ranged from 55 to 60 and he was diagnosed with "Dysthymic Disorder," "Generalized Anxiety Disorder," a "History of Sexual and Physical Abuse (If Focus of Attention is on Victim)," "ADHD," "Major Depressive Disorder (Recurrent, Severe Without Psychotic Features)," "Panic Disorder (without Agoraphobia)," "Pedophilia," "Alcohol Dependence," "PTSD," "Peripheral Artery Disease" ("PAD"), "Neuropathy," and "Nicotine

---

[5] A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015).

Case No. 3:15cv532/CJK

Dependence." T. 367, 370, 371, 375, 376, 414, 415, 418. Multiple medical professionals, including Dr. Guido Ludergnani, Nurse Eric Sternung, and Dr. Ratko Sarazin, saw claimant during his visits to Lakeview Center. The record indicates the claimant attended these sessions with a goal-oriented mindset, generally normal psychomotor activity, no abnormal movements, and non-pressured speech. T. 367, 370, 414, 416, 418, 420, 422, 424, 426, 428, 438, 444.

The ALJ appointed Dr. John Dawson to perform a consultative physical examination of the claimant. A different physician had diagnosed claimant with PAD, but after performing a Doppler exam, Dr. Dawson found no credible evidence of PAD. T. 386, 387. Dr. Dawson concluded claimant could lift/carry twenty pounds occasionally as well as ten pounds frequently, sit six hours of an eight-hour workday, and stand/walk four hours of an eight-hour workday. T. 387. Dr. Dawson's examination found "no gross abnormality" of the claimant's back. T. 387. Claimant also denied having diabetes during the examination. T. 386.

The ALJ also noted the opinions of four non-examining, state agency consultants: Dr. Theodore Weber, Dr. Sharon Ames-Dennard, Dr. Edmund Molis, and single decision maker, Christopher Davis. Dr. Molis and Mr. Davis each concluded Mr. Anderson could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. T. 89-90, 117-18. Drs. Weber and

Ames-Dennard each concluded Mr. Anderson's capacity for understanding and memory, sustained concentration and persistence limitations, and social interaction limitations and adaptive limitations were classified either as "moderately limited" or the less severe "not significantly limited."  T. 92, 120-21.

On December 6, 2013, Dr. Ludergnani and Nurse Sternung completed a "Depression and Anxiety Questionnaire."  T. 441-43.  On the questionnaire, Dr. Ludergnani and Nurse Sternung indicated claimant had marked restrictions of activities of daily living, extreme difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and marked episodes of deterioration or decompensation in work or work-like settings.  T. 443.

Claimant and claimant's wife, respectively, signed a Supplemental Pain Questionnaire and a Supplemental Third Party Pain Questionnaire.  T. 312-14, 325-27.  Among other things, the questionnaires collectively indicated the claimant sometimes wakes up in pain, has to take Ibuprofen, could not walk very far without pain, has pain while driving, cannot walk more than a block without stopping and resting, and could not go shopping.  Claimant and claimant's wife also, respectively, signed a Functional Report-Adult and a Functional Report-Adult-Third Party.  T. 304-11, 328-35.  These functional reports indicated, among other things, the claimant could mow the yard, drive, fish once a month, count change, use a

checkbook/money orders, read fairly well, watch television fairly well, attend church once a week, and follow verbal instructions. T. 304-11, 328-35.

## ANALYSIS

Plaintiff argues: (1) the ALJ erred in assigning little weight to the opinion of Dr. Ludergnani and Nurse Sternung; and (2) the ALJ's determination that claimant can perform the standing and walking required of light work is not supported by substantial evidence. (Doc. 9).

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2),

416.927(c)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x. 589, 591 (11th Cir. 2006).

Claimant argues the ALJ failed to articulate good cause for rejecting the opinions found on the Depression and Anxiety Questionnaire. In the decision, the ALJ assigned little weight to Nurse Sternung's opinion because the questionnaire was "inconsistent with the bulk of the medical evidence, and because Mr. Sternung

did not provide any objective medical evidence or medical reports to support his contentions."[6] T. 28. As explained below, the ALJ's reasons for discounting the opinions on the questionnaire are supported by substantial evidence.

Various doctors at Lakeview Center stated the claimant had normal psychomotor activities, maintained good eye contact, was pleasant and cooperative, had no abnormal movements, had non-pressured, spontaneous, and normal speech, and was goal directed. These charting entries are not consistent with the Depression and Anxiety Questionnaire at issue here. The questionnaire suggests (1) claimant had anhedonia or pervasive loss of interest in almost all activities, (2) had psychomotor agitation or retardation, (3) hyperactivity, and (4) pressure of speech. T. 363-445. Because, as the ALJ said, the questionnaire is inconsistent with the medical evidence in the record, substantial evidence supports the decision to assign little weight to the questionnaire.

Plaintiff also claims the ALJ overlooked evidence that "Dr. Ludergnani reviewed and authenticated much of claimant's Lakeview treatment." The ALJ, however, discussed the records from Lakeview Center and noted they showed

---

[6] Although plaintiff claims the ALJ overlooked the fact that Dr. Ludergnani agreed with Nurse Sternung's opinion on the Depression and Anxiety Questionnaire, the ALJ articulated good cause to reject the opinions on the questionnaire. Thus, the ALJ's failure to mention Dr. Ludergnani's agreement is harmless. Given the evidence in the record, remand for further discussion of Dr. Ludergnani's role would serve no practical purpose, not alter the ALJ's findings, and be a waste of judicial and administrative resources. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855 (11th Cir. 2013).

improvement and mild symptoms. T. 28. These records support the ALJ's determination and are inconsistent with the limitations found on the Depression and Anxiety Questionnaire. Also, the ALJ's decision did not ignore or overlook Dr. Ludergnani's evidence because the decision referred to the evidence by parenthetical citation to exhibit names [e.g. (9f), (6f), (etc.)]. T. 28.

Additionally, the questionnaire is inconsistent with the state agency consultants' collective opinions. State agency consultants are highly qualified specialists who are also experts in the Social Security disability evaluation, and their opinions may be entitled to great weight if the evidence supports their opinions. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.) The consultative opinions support the ALJ's conclusion that the claimant was "basically stable mentally and able to function" because the opinions suggest either moderate limitations or no significant limitations to the claimant's capacity for understanding and memory, sustained concentration and persistence limitations, and social interaction limitations and adaptive limitations. T. 28. Thus, the state agency consultants' opinions provide additional support for the ALJ's assignment of little weight to the Sternung and Ludergnani questionnaire.

Claimant argues "the ALJ did not discuss the GAF scores assessed by the Claimant's treating physicians, nor did the ALJ give any reason for refusing to credit these GAF scores, which support more than the 'mild' functional limitations the ALJ

arrived at in determining Claimant's RFC." (Doc. 9, p. 15). The ALJ expressly gave significant weight to the GAF scores, noting "they derive from a treating source, and are consistent with the majority of the medical evidence." T. 28. Plaintiff contends the GAF scores support the more than "mild" functional limitations the ALJ assigned the claimant. The ALJ, however, stated the GAF scores between 55 and 60 assigned to the claimant "buttress the undersigned's contention that the claimant has moderate concentration/social functioning difficulties, and is consistent with the undersigned's finding that the claimant is limited to performing simple work, with restrictions in interacting with the public/co-workers/supervisors and in adapting to workplace changes." T. 27-28. GAF scores may be helpful in formulating a claimant's RFC, but are not essential to the RFC's accuracy, and an ALJ's failure to describe GAF scores does not render the ALJ's RFC assessment inaccurate. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (explaining that an ALJ's failure to reference GAF scores from four different mental health reports does not render an RFC assessment inaccurate). Furthermore, plaintiff has failed to explain how the GAF scores translate to a more restrictive RFC than that formulated by the ALJ.

Claimant next argues the ALJ erred because the hypothetical posed to the VE failed to encompass "an individual with such 'moderate limitations.'" (Doc. 9, p. 15). The ALJ did not fail to encompass moderate limitations because the

hypothetical included the limitation of "no work with the general public," which relates to the ALJ's determination that the claimant has moderate difficulties dealing with people. T. 24, 51. The hypothetical also tracked the ALJ's determination that the claimant had moderate concentration difficulties, by noting the hypothetical person was "able to attend and concentrate for two hours at one time before needing a break." T. 24, 51. Because the ALJ's hypothetical accurately reflected claimant's RFC, and the RFC is supported by substantial evidence, the ALJ did not err in posing the hypothetical to the VE.

Claimant asserts Dr. Dawson's opinion does not support the conclusion claimant is capable of light work, and the ALJ, therefore, erred when she assigned a "light weight" exertional level to the claimant. Claimant predicates this statement on SSR 83-10's requirements for the *full range* of light work, which requires standing/walking for six hours of an eight-hour workday. The claimant concedes, however, the ALJ "determined that Claimant has the RFC to perform the sitting and standing of light work, with the exception that he is able to 'stand/walk at least four hours of an eight-hour workday. . .'" (Doc. 9, p. 16). Thus, the ALJ never determined claimant could perform the full range of light work. The ALJ concluded plaintiff was capable of a reduced range of light work based on Dr. Dawson's opinion, which found claimant could stand/walk for four hours out of an eight-hour work day. T. 387. Plaintiff has not directly challenged Dr. Dawson's findings or

presented the opinion of a physician that includes more restrictive exertional limitations. The ALJ's determination that claimant could perform a reduced range of light work, therefore, is supported by substantial evidence.

Claimant also takes issue with the ALJ's view of claimant's and claimant's wife's pain questionnaire responses concerning bilateral foot pain. The questionnaire responses emphasize foot pain, but Dr. Dawson found no evidence of PAD, diabetes, or any underlying cause of foot pain. The ALJ did not err by assigning less weight to the pain questionnaire responses than the functional report responses because the pain questionnaire responses were not supported by the medical evidence as a whole.

Moreover, claimant does not challenge the ALJ's determination that the plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible, so the ALJ's determination of claimant's credibility stands. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006). (noting claimant waived issue because he did not elaborate on the claim or provide citation to authority regarding the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). T. 27. For example, the ALJ noted the claimant sought work in 2013,

despite declaring disability in 2011.  T. 28.  Thus, the ALJ did not err by declining to credit the subjective statements found on the pain questionnaires.

The claimant suggests the ALJ conceded the claimant can only perform sedentary work when she stated at the hearing, "All right. So, I essentially have sedentary here. Okay."  T. 50.  The ALJ made the statement after hearing claimant's in-court testimony but *before* hearing the VE's in-court testimony, so the ALJ's statement was either a temporary conclusion, which was not based on all of the evidence that was used to reach the final decision, or was simply a characterization or summary of the claimant's testimony concerning his exertional limits.  Regardless, the ALJ's statement at the hearing does not constitute a binding determination of the claimant's RFC.

## CONCLUSION

After careful review, the undersigned concludes the ALJ did not err when she afforded little weight to Dr. Ludergnani and Nurse Sternung's medical opinions because the opinions contradicted the evidence in the record.  Also, the ALJ did not err when she determined the claimant could perform a reduced range of light work because the ALJ based her decision on Dr. Dawson's conclusion that the claimant could stand/walk for four hours out of an eight-hour work day.

Accordingly, it is ORDERED:

1. The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2. The clerk is directed to close the file.

DONE AND ORDERED this 17th day of June, 2016.

*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITEDSTATESMAGISTRATEJUDGE**